IN THE MATTER OF THE PETITION TO COMPEL TESTI-
MONY OF THOMAS K. J. TUSO UNDER *N. J. S. A.* 2A:
81–17.3.

Superior Court of New Jersey
Appellate Division

Argued March 2, 1976—Decided March 26, 1976.

502

Before Judges KOLOVSKY, BISCHOFF and BOTTER.

*Mr. Marvin D. Perskie* argued the cause for appellant (*Messrs. Perskie and Callinan,* attorneys).

*Mr. Mark J. Malone,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

BISCHOFF, J. A. D. A state grand jury, sitting in the State House Annex (hereafter Grand Jury 29), returned a four-count indictment against defendant Thomas K. J. Tuso. The first count charges that Tuso "and Dante D'Anastasio who is named as a co-conspirator but not as a defendant" unlawfully conspired to bribe Clarence A. Custis, vice-president of Cumberland County Regional School Board, to secure the award of a contract for architectural services in connection with a proposed Cumberland County regional high school. The remaining three counts charge Tuso with the attempted bribery of Custis.

Defendant was summoned to appear before another state grand jury, sitting at the State Police Barracks in West Trenton (hereafter Grand Jury 27) and, under a grant of statutory immunity (*N. J. S. A.* 2A:81–17.3) was ordered to testify and produce evidence concerning "an alleged conspiracy to bribe a member of the Cumberland Regional

School District Board of Education and to solicit misconduct in office by said Board member."

It is undisputed that Grand Jury 27 is inquiring into the same conspiracy as that for which Tuso has been indicted and is seeking to determine whether Dante D'Anastasio should be indicted as his coconspirator.

We granted defendant's application for leave to appeal from that order and entered a stay thereof pending our determination of this appeal.

The following facts are basically undisputed. Tuso, an attorney, was the target of a criminal investigation into an alleged attempt to bribe a public official and he was so informed. He met with Detective Zeuner and Deputy Attorney General Malone in his office in Vineland on July 25, 1975. He thereafter voluntarily met with the same two men for approximately 11½ hours. Tuso extended some degree of cooperation with respect to the investigation into the alleged activities of Tuso and D'Anastasio, an architect, in seeking to bribe a public official in return for the award of a contract to D'Anastasio's architectural firm for services in connection with the construction of a proposed regional high school.

Tuso was subpoenaed to appear before the state grand jury at the State House Annex on July 31, 1975. At the request of his counsel his subpoena was continued to August 7, 1975. He reappeared at the State House Annex on August 7 and was informed that he was to appear before a different state grand jury sitting at the State Police Barracks; this was Grand Jury 27. He went there immediately and was informed by Malone that Grand Jury 27 was investigating D'Anastasio, and Tuso was questioned concerning his dealings with D'Anastasio and the interconnection between D'Anastasio's architectural firm and the alleged attempt to bribe Custis. Tuso refused to "answer any questions on the ground of the protection afforded [him] by the Fifth and Fourteenth Amendments of the United States Constitution."

The State made application to Judge Salvatore for an order, pursuant to *N. J. S. A.* 2A:81–17.3, to compel Tuso to testify before Grand Jury 27, contending that Grand Jury 27 was not investigating Tuso, but D'Anastasio.

Before a resolution of that application Tuso was indicted by Grand Jury 29 for the crime of conspiracy to bribe and attempted bribery. Thereafter Judge Salvatore, in a letter opinion, held that Tuso's Fifth Amendment rights were "adequately protected by the use immunity provision of the statute [*N. J. S. A.* 2A:81–17.3]" and that since the grand jury before whom he was asked to testify would not indict him, he could be compelled to testify.[1]

Defendant appeals from the order directing him to appear and testify before Grand Jury 27.

In support of its position, the State argues that:

(1) If a witness refuses to answer questions before a grand jury on the ground that the answers may incriminate him and the Attorney General in writing, pursuant to *N. J. S. A.* 2A:81–17.3, requests the court to order that witness to answer, thereby conferring use immunity upon him pursuant to the statute, the court must so order and has no discretion in the matter. The State contends that the court's duties under the statute are ministerial in nature;

(2) Tuso, having been so ordered, must appear before Grand Jury 27 and testify, and

(3) The grant of "use immunity" affords adequate protection to Tuso, even though he has been indicted as a coconspirator by a different grand jury for the same conspiracy and the questions to be put to him are related to that conspiracy.[2]

---

[1] Tuso also resisted the application of the State on the premise that an attorney-client relationship existed between him and D'Anastasio and was a bar to any order compelling him to testify. In a separate proceeding before a different judge, that issue was resolved against Tuso. It is not raised on this appeal.

[2] In order to protect Tuso from the use or derivative use of any testimony he would give before Grand Jury 27 in his trial, the

■ Courts are zealous in safeguarding the values that underlie the privilege against self-incrimination provided by the Fifth Amendment. *Kastigar v. United States,* 406 *U. S.* 441, 445, 92 *S. Ct.* 1653, 32 *L. Ed.* 2d 212 (1972); *Miranda v. Arizona,* 384 *U. S.* 436, 443–444, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d 694 (1966); *State v. DeCola,* 33 *N. J.* 335, 341 (1960); *State v. Fary,* 19 *N. J.* 431, 434 (1955); *State v. Browning,* 19 *N. J.* 424 (1955).

On the other hand, the right, indeed the duty, of a grand jury to investigate criminal activities and to expose crime wherever it exists, requires on occasion that those involved in criminal activities be compelled to testify; otherwise, crime might go undiscovered, and unpunished. *In re Zicarelli,* 55 *N. J.* 249, 267 (1970), aff'd 406 *U. S.* 472, 92 *S. Ct.* 1670, 32 *L. Ed.* 2d 234 (1972); *State v. DeCola,* 33 *N. J. supra* at 341.

The privilege against self-incrimination, which benefits and protects the individual, adversely affects the interests of the public because when it is invoked it denies the State the benefit of the facts thereby concealed.

So-called "immunity statutes" which confer use or derivative use immunity on a witness in exchange for his compelled testimony contrary to the Fifth Amendment has been enacted in an attempt to adjust these competing values and to obtain a "rational accommodation between the imperatives of the privilege and the legitimate demands of the government to compel citizens to testify." *Kastigar v. United States, supra* 406 *U. S.* at 446, 92 *S. Ct.* at 1657; *In re Zicarelli, supra* 55 *N. J.* at 267; *Murphy v. Waterfront Comm'n of N. Y. Harbor,* 378 *U. S.* 52, 84 *S. Ct.* 1594, 12 *L. Ed.* 2d 678 (1964).

---

State has sealed and certified the record of evidence which it proposes to use in Tuso's trial and has lodged it with the court. The State further proposes to use a different Deputy Attorney General before Grand Jury 27, who will thereafter have no communications with the Deputy Attorney General who will be assigned to try Tuso.

■ Immunity statutes have, as their underlying premise, the need of the public to obtain possession of information known to the witness. It follows that if there is no public need for the information, there is no justification for stripping a witness of his constitutional right to remain silent.

The State here argues that the sole discretion to determine whether a "public need" exists is vested by statute in the Attorney General. Reliance is placed upon the statutory provision that "[i]n any criminal proceeding before a * * * grand jury * * * if the Attorney General * * * in writing, requests the court to order that person to answer the question or produce the evidence, the court shall so order and that person shall comply with the order * * *." *N. J. S. A.* 2A:81–17.3. Furthermore, the State argues that, should such a request be made, the court has no discretion in the matter other than to ascertain if the requirements of the statute have been met; and if they have, then the order to answer must be issued.

[3, 4] Many cases, starting with *Ullman v. United States,* 350 *U. S.* 422, 76 *S. Ct.* 497, 100 *L. Ed.* 511 (1955), have so held. In considering an immunity statute with language similar to that now before us, the court in that case held that "a fair reading of [the statute] does not indicate that the district judge has any discretion to deny the order on the ground that the public interest does not warrant it." *Id.* at 432, 76 *S. Ct.* at 503. Similar holdings appear in the following cases: *In re Lochiatto,* 497 *F.* 2d 803 (1 Cir. 1974); *In re Kilgo,* 484 *F.* 2d 1215, 1219 (4 Cir. 1973); *In re Grand Jury Investigation,* 486 *F.* 2d 1013, 1018 (3 Cir. 1973), cert. den. 417 *U. S.* 919, 94 *S. Ct.* 2625, 41 *L. Ed.* 2d 224 (1974); *Application of U. S. Senate Select Committee on Presidential Campaign Activities,* 361 *F. Supp.* 1270, 1276 (D. C. 1973); see also *Rule 732 of Uniform Rules of Criminal Procedure,* 10 *ULA* 340; *Model State Witness Immunity Act,* 9C *ULA* 190. However, we do not read either the statute or these cases as compelling a court to issue an order which is basically unfair, in-

equitable or totally unnecessary on the plain record before it. *Cf. State v. Gledhill,* 67 *N. J.* 565, 583 (1975); *Frank v. United States,* 120 *U. S. App. D. C.* 392, 347 *F.* 2d 486, 491 (Cir.), *cert.* dism. 382 *U. S.* 923, 86 *S. Ct.* 317, 15 *L. Ed.* 2d 338 (1965). Moreover, as opposed to the rule espoused in the federal courts, in New Jersey we adhere to the proposition that in situations where broad discretion is vested in the prosecutor, such discretion is not unregulated or absolute and, in appropriate circumstances, his exercise of that discretion may be reviewed for arbitrariness or abuse. *In re Investigation Regarding Ringwood Fact Finding Comm.,* 65 *N. J.* 512, 516 (1974).

"It is clear that a grand jury is an inquisitorial, informing and accusing body." *Rossetty v. Hamilton Tp.,* 82 *N. J. Super.* 340 (Law Div. 1966), aff'd o. b. 96 *N. J. Super.* 66 (App. Div. 1967). "It is the specific function of the grand jury to find or return an indictment or presentment in open court * * *." *State v. Smith,* 102 *N. J. Super.* 325, 336 (Law Div. 1968), aff'd 55 *N. J.* 476 (1970), *cert.* den. 400 *U. S.* 949, 91 *S. Ct.* 232, 27 *L. Ed.* 2d 256 (1970). The primary duty of grand jurors is to ascertain whether reasonable grounds exist to believe that a defendant has committed a crime. *Costello v. United States,* 350 *U. S.* 359, 76 *S. Ct.* 406, 100 *L. Ed.* 397 (1966); *State v. Grundy,* 136 *N. J. L.* 96 (Sup. Ct. 1947); *State v. Donovan,* 129 *N. J. L.* 478 (Sup. Ct. 1943); *State. v. Fisher,* 112 *N. J. Super.* 319, 322 (Law Div. 1970); *State v. Costa,* 109 *N. J. Super.* 243, 246 (Law Div. 1970). Having reached the conclusion that reasonable grounds do exist to believe that a defendant has committed a crime, their duty is to return an indictment and their responsibility in connection with the case is then concluded. They do not make a determination of guilt or innocence.

We turn to the record now before us.

The Attorney General possesses considerable information obtained from Tuso during the course of the original conference of July 25, 1975, and from the 11½ hours of con-

ferences conducted thereafter. He has tapes of telephone conversations between Tuso and Custis and between Tuso and D'Anastasio obtained from tapped telephone lines. He has so-called "body tapes" recording conversations between Tuso and Custis. Moreover, Deputy Attorney General Malone, who presented the case to Grand Jury 29 which indicted Tuso, is now pressing for the order to compel Tuso to testify before Grand Jury 27. There was sufficient information available before Grand Jury 29 to name D'Anastasio as an unindicted coconspirator, and we assume such testimony is available for presentation to Grand Jury 27.

Of paramount significance is the concession by Deputy Attorney General Malone at oral argument that he possesses sufficient information to obtain an indictment against D'Anastasio but desires Tuso's testimony to obtain sufficient information to ensure a conviction. This desire of the Deputy Attorney General for unilateral discovery does not furnish justification for an order compelling Tuso to testify before Grand Jury 27 under the circumstances here present.

The public need to obtain information possessed by Tuso may be accommodated by future events without jeopardizing his Fifth Amendment rights. If Tuso proceeds to trial before D'Anastasio, Tuso may elect to testify, in which case his knowledge will become a matter of record. If he elects to remain silent and is acquitted or convicted, his Fifth Amendment privilege will no longer exist, for then his statements could not be used against him under principles of double jeopardy. *In re Liddy,* 506 *F.* 2d 1293, 1300 (D. C. Cir. 1974); *United States v. Romero,* 249 *F.* 2d 371 (2 Cir. 1957); *cf. Katz v. United States,* 389 *U. S.* 347, 349, n. 3, 88 *S. Ct.* 507, 19 *L. Ed.* 2d 576 (1967); *Reina v. United States,* 364 *U. S.* 507, 513, 81 *S. Ct.* 260, 5 *L. Ed.* 2d 249 (1960).

On the other hand, if Grand Jury 27 indicts D'Anastasio and the prosecutor elects to proceed to trial on that indictment first, he may still apply, under this statute (*N. J. S. A.* 2A:81–17.3), for an order compelling Tuso to testify

in open court if he believes that compelling such testimony will not embarrass or impede his prosecution at a subsequent trial of Tuso.

In any event, it is our conclusion that basic and fundamental principles of fair play require that Tuso's Fifth Amendment privilege to remain silent should at this time remain inviolate. *Cf. State v. Redinger,* 64 *N. J.* 41, 50 (1973).

Reversed.