73 N.J. 575 (1977)
376 A.2d 895
IN THE MATTER OF THE PETITION TO COMPEL TESTIMONY OF THOMAS K.J. TUSO, UNDER N.J.S.A. 2A:81-17.3.
The Supreme Court of New Jersey.
Argued March 7, 1977.
Decided June 30, 1977.
*577 Mr. Robert J. Del Tufo, First Assistant Attorney General, and Mr. Mark J. Malone, Deputy Attorney General, argued the cause for appellant Mr. William F. Hyland, Attorney General of New Jersey (Mr. Hyland, attorney).
Mr. Marvin D. Perskie argued the cause for respondent (Messrs. Perskie and Callinan, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D., Temporarily Assigned.
The Appellate Division reversed an order of the Law Division directing Thomas K.J. Tuso to testify before a State grand jury (Grand Jury No. 27) under and pursuant to N.J.S.A. 2A:81-17.3 ("Witness Immunity Act") on the ground that there was "no public need" for the information sought of the witness and that compelling him to testify under the circumstances would be "stripping [the] witness of his constitutional right to remain silent." In re Petition to Compel Testimony of Tuso, 140 N.J. Super. 500, 507 (App. Div. 1976). We are constrained to disagree. The Attorney General was here acting well within his authority to investigate and prosecute crime, and the witness was not denied his Fifth Amendment privilege not to be compelled to incriminate himself.
*578 The circumstances of the case are these. Respondent Tuso is a lawyer who was visited by a Deputy Attorney General and a State Police detective at his office on July 25, 1975. They advised him that he was the target of a criminal investigation involving an alleged attempt to bribe a public official, and he was given the Miranda warnings. Tuso agreed to cooperate with them and he supplied them with considerable information relating to efforts by Tuso to obtain a contract for architectural work on behalf of one D'Anastasio in connection with a proposed new regional high school building in Cumberland County. Tuso had supposedly, with D'Anastasio's authority, offered one Curtis, an officer of the board of education involved, money in return for the award of the contract. Tuso was to receive a percentage of the architectural fee. On the same occasion Tuso was served with two subpoenas, one of them duces tecum, to appear before a statewide grand jury.
On August 6, 1975 the Law Division denied a motion by Tuso to quash the subpoenas duces tecum and on the next day Tuso appeared before Grand Jury No. 27, and, under questioning, asserted his privilege against self-incrimination. The Attorney General thereupon petitioned the Court for an order compelling Tuso to testify, under N.J.S.A. 2A:81A-17.3. That statute provides that in any criminal proceeding before a grand jury, if a person refuses to answer a question on grounds of self-incrimination and the Attorney General requests the Court to order that person to testify, "the court shall so order and that person shall comply with the order." In such case, and if but for the statute the person would have been privileged not to testify, any testimony or evidence given by him or any information directly or indirectly derived therefrom may not be used against the person in any proceeding or prosecution for a crime concerning which he so testified under court order ("use and fruits immunity" hereinafter). Pending the court's decision on the motion, another State grand jury (Grand Jury No. 29), on August 28, 1975 indicted Tuso for conspiracy, soliciting misconduct *579 in office and bribery. D'Anastasio was named as an unindicted co-conspirator. Tuso had not appeared before Grand Jury No. 29.
On October 8, 1975 the Law Division ordered Tuso to testify before Grand Jury No. 27, subject to a preliminary proceeding to determine whether communications between Tuso and D'Anastasio were protected by the attorney-client privilege. It was subsequently determined that they were not. The order to testify under the statute was reconfirmed by the Court.
Thereafter Tuso obtained a stay of the order from the Appellate Division; and that court granted leave to appeal and ultimately reversed the order as aforestated. We granted certification. 71 N.J. 328 (1976).
The principal basis for the conclusion of the Appellate Division was that the State did not need the information it was seeking from Tuso. However, it is clear that the statute cited above delegates the function of determining need in such a situation to the Attorney General (or prosecutor, with the approval of the Attorney General), not the court, conformably with the duty of that officer to attend to the enforcement of the criminal laws. Upon request by the Attorney General, the statute directs that the court "shall" order the witness to testify. The Appellate Division conceded that the federal cases uniformly construe the parallel federal immunity statute to withhold any discretionary right in the court to deny an order to testify when the prosecuting officer has met the prerequisites of the statute. 140 N.J. Super. at 507. Cf. Bursey v. United States, 466 F. 2d 1059, 1073 (9 Cir.1972), cited and quoted in State v. Kenny, 68 N.J. 17, 30 (1975). But the Appellate Division felt the federal cases were not authoritative where the order sought was "basically unfair, inequitable or totally unnecessary." 140 N.J. Super. 507, 508.
The Appellate Division did not specify the basis for its conclusion of unfairness or inequity beyond the assertion that the Attorney General did not need anything further *580 from Tuso to incriminate D'Anastasio, the avowed then target of its inquiry. The court stated, in this regard, that the Deputy Attorney General conceded at oral argument he had sufficient information for an indictment against D'Anastasio but wanted Tuso's testimony to assure a conviction. 140 N.J. Super. at 509. The Attorney General now responds that his only evidence against D'Anastasio thus far is hearsay, and that it is not an abuse of his discretionary powers of prosecution and investigation to elicit stronger evidence even if the hearsay would suffice to sustain an indictment, as distinguished from what would be required to make a prima facie case at trial. Cf. State v. Ferrante, 111 N.J. Super. 299, 305 (App. Div. 1970); State v. Donovan, 129 N.J.L. 478 (Sup. Ct. 1943). We are in agreement with the Attorney General. The court may not hamstring a prosecuting official in his marshalling of evidence before a grand jury on any fine-spun distinctions between what evidence is sufficient to return a valid indictment and what is necessary to convict. Moreover, the measure of the prosecutor's discretion or judgment in such matters extends to the grand jury's responsibility for investigation of crime as well as the return of indictments. In re Addonizio, 53 N.J. 107, 124, 126 (1968). The Attorney General must in the public interest be afforded broad authority to decide what avenues to pursue before the grand jury in the investigation and prosecution of crime.
It appears to us implicit in the Appellate Division's opinion, although nowhere expressly stated as a reason, that what it thought unfair about ordering Tuso to appear before the grand jury was the fact that he had been indicted in connection with the same transactions. However that circumstance was irrelevant. It is a conclusive presumption under the decisions that by its use and fruits immunity our Witness Immunity Statute affords a non-target witness ordered to testify thereunder full protection both under the Fifth Amendment guarantee against self-incrimination, Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed. 212 (1972), and under our corresponding state common-law *581 privilege. See In re Addonizio, supra, 53 N.J. at 114-116; State v. Vinegra, 73 N.J. 484 (1977). Since Tuso was not a target of the investigation before State Grand Jury No. 27, which was aimed only at D'Anastasio, and Tuso had the benefit of the statutory immunity, there was no justification for the characterization by the Appellate Division of the order herein as "stripping a witness of his constitutional right to remain silent." These conclusions are not less valid because Tuso was already under indictment in connection with the same transaction. Our view of the matter is further buttressed by the precaution the State took in sealing and certifying the record of evidence it proposed to use at Tuso's trial and lodging it with the court; also by the plan to use a different Deputy Attorney General before Grand Jury No. 27 from the one assigned to try Tuso. See 140 N.J. Super. at 505-506, n. 2.[1]
The judgment of the Appellate Division is reversed and that of the Law Division reinstated.[2]
HUGHES, C.J., concurring.
I concur with the result reached by the majority, and concede that a court may not encroach upon the basic executive and prosecutorial decision to grant immunity.
Nevertheless, it is most important to emphasize the continuing supervisory obligation and power of the judiciary to protect constitutional and other rights of persons appearing before the grand jury. This leads me also to join, except for one point, in the opinion of Justice Pashman.
*582 As the majority also recognize, the power of the grand jury is such as to necessitate judicial supervision, lest that broad power be misused to the harm of constitutional or basic rights of the citizen (opinion at note 2). However, I do not believe, as I have recently stated, that "so drastic a step" (United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510, 515 (1966)) as transactional immunity is warranted. State v. Vinegra, 73 N.J. 484 (1977) (Hughes, C.J., dissenting).
PASHMAN, J., dissenting.
This case presents the recurring problem of attempting to safeguard a witness' privilege against self-incrimination while compelling him to testify under a grant of use immunity. N.J.S.A. 2A:81-17.3. As I stated in my dissent in State v. Vinegra, 73 N.J. 484 (1977), I believe that adequate protections for the privilege cannot be fashioned as long as the State is free to prosecute a witness for acts about which he has been compelled to testify. As a result, I again urge the Court to adopt transactional immunity as a matter of state constitutional law.
In the present case, the State sought to present evidence simultaneously to two grand juries concerning the involvement of defendant and his alleged co-conspirator, D'Anastasio, in a scheme to bribe a public official. Although it had sufficient evidence to secure an indictment of defendant, it considered his testimony necessary for an indictment and successful prosecution of the co-conspirator. The State attempted to obtain Tuso's testimony in the grand jury investigation of D'Anastasio by granting him use immunity and by erecting certain safeguards to ensure against the subsequent use of his compelled testimony. Separate Deputy Attorneys General conducted the two trials, and all evidence against Tuso which had been obtained prior to the order to testify was sealed. (Ante at 581).
Although designed to prove that its sources of evidence at the Tuso trial were obtained independently of the accused's compelled testimony, the State's procedures fall short *583 of providing safeguards which are "coextensive with the privilege against self-incrimination." See State v. Vinegra, supra, 73 N.J. at 514 (Pashman, J., dissenting). As I stated in greater detail in Vinegra, supra, even where investigatory leads are derived from independent sources, the prosecution's case may be benefitted at trial by the defendant's compelled testimony. The prosecutor may be able to tailor his questioning or presentation to reflect testimony which he knows Tuso will give, or even deter him from testifying for fear that his prior compelled testimony may be used to impeach him. See Vinegra, at 525-526 (Pashman, J., dissenting). This may be true even if there are separate prosecutors. As Justice Brennan observed:
Men working in the same office or department exchange information without recording carefully how they obtained certain information; it is often impossible to remember in retrospect how or when or from whom information was obtained. By hypothesis, the situation involves one jurisdiction with presumably adequate exchange of information among its various law enforcement officers. Moreover, the possibility of subtle inferences drawn from action or nonaction on the part of fellow law enforcement personnel would be difficult if not impossible to prove or disprove.
[Piccirillo v. New York, 400 U.S. 548, 567-68, 91 S.Ct. 520, 531, 27 L.Ed.2d 596, 609 (1971) (Brennan, Marshall, JJ., dissenting from order dismissing writ of certiorari as improvidently granted); (citation omitted)].
In the instant case it would be impossible to prove that, if Tuso had been compelled to testify, information obtained from him would not have been made available to the person prosecuting his case. Significantly, both grand jury inquiries in this case were handled by the same Deputy Attorney General. If Tuso had testified under immunity before the grand jury investigating D'Anastasio, the Deputy Attorney General handling this proceeding would have been barred from participating at trial against Tuso. By his own statement at oral argument, the Deputy Attorney General in charge of this case admitted that he had not handled *584 the Tuso trial, and would have been prevented from discussing any part of this case with the prosecutor trying Tuso if he had testified under compulsion.[1] But it seems ludicrous to assume that, after hearing Tuso testify before Grand Jury No. 27, the Deputy Attorney General would have simply handed over the case in midstream to a new trial attorney without ever discussing any of the facts of the case. Yet clearly any such interaction would have violated Tuso's privilege.
While these considerations lead me to dissent from the Court's judgment, they do not support the Appellate Division's conclusion that a court may deny a request for an order directing a grand jury witness to testify under a grant of use immunity solely because the State already has sufficient evidence to return an indictment. On this ground, I am in accord with the majority's reasoning. However, I hasten to add that a court still has substantial review powers to consider the constitutionality of a particular order and to guard against prosecutorial abuses in grand jury investigations. I add the following comments lest the Court's description of the purely "ministerial" role of the court be taken to undercut these well established powers.
I concur in the majority's conclusion that the immunity statute, N.J.S.A. 2A:81-17.3, should be interpreted in harmony with federal precedents construing analogous statutory provisions. These cases uniformly hold that a court is without discretion in reviewing the United States Attorney's conclusion that such an order is necessary to the public interest, and that the court exercises duties which are merely ministerial in nature. See, e.g., Ullman v. United States, 350 U.S. 422, 434, 76 S.Ct. 497, 100 L.Ed. 511, reh. den. 351 U.S. 928, 76 S.Ct. 777, 100 L.Ed. *585 1457 (1956); United States v. Leyva, 513 F.2d 774, 776 (5 Cir.1975); Urasaki v. United States District Court, 504 F. 2d 513, 514 (9 Cir.1974); In Re Grand Jury Investigation, 486 F.2d 1013, 1016 (3 Cir.1973) (dictum), cert. den. sub nom., Testa v. United States, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974); In Re Kilgo, 484 F.2d 1215, 1219 (4 Cir.1973); In Re Russo, 448 F.2d 369, 372-73 (9 Cir.1971); In Re Shead, 302 F. Supp. 569, 570 (N.D. Calif. 1969), aff'd sub nom. Carter v. United States, 417 F.2d 384 (9 Cir.1969), cert. den. 399 U.S. 935, 90 S.Ct. 2253, 26 L.Ed. 807 (1970).
But while federal precedents indicate that a court has no discretion to determine whether a grant of immunity would be in the public interest, they also establish that courts have ample authority to check prosecutorial abuses in utilizing the immunity apparatus to secure compelled testimony. It is universally accepted that courts are bound to examine the constitutionality of a proposed order compelling a witness to testify.[2]See Brown v. United States, 359 U.S. 41, 49, 79 S.Ct. 539, 3 L.Ed.2d 609, 616 (1959); reh. den. 359 U.S. 976, 79 S.Ct. 873, 3 L.Ed.2d 843 (1959); Bursey v. United States, 466 F.2d 1059, 1075 (9 Cir.1972); Matter of Doe, 410 F. Supp. 1163, 1165 (E.D. Mich. 1976); Application of U.S. Senate Select Com. on Pres. Cam. Act, 361 F. Supp. 1270, 1279 (D.D.C. 1973); In re Baldinger, 356 F. Supp. 153, 169-70 (C.D. Calif. 1973). As the court in Baldinger, supra, stated:
*586 Congress cannot compel the courts to issue orders which violate the constitutional privileges of this nation's citizens, * * * [or] engage in any action which deprives a party before it of his constitutional rights. It has long been recognized that it is a proper function of courts to act as a check of improper use of both executive and legislative investigatory powers.
[356 F. Supp. at 169]
This authority would extend, of course, to determinations concerning the constitutionality of the immunity statute as applied to a specific case, see, e.g., Brown v. United States, supra, 359 U.S. at 49, 79 S.Ct. at 545, 3 L.Ed.2d at 616; Baldinger, supra, 356 F. Supp. at 170; Hearings on H.R. 11157 and H.R. 12041 Before Subcomm. No. 3 of the House Comm. on the Judiciary, 91st Cong., 1st Sess., Ser. 14 at 69 (1969), and to allegations that an order to testify would violate some independent constitutional right, see, e.g., Bursey v. United States, supra, 466 F.2d at 1079-81 (finding that fundamental fairness inherent in due process places some limitations on repetitious questioning, and that due process is violated by requiring a witness to answer questions excepted from grant of immunity); In re Tierney, 465 F.2d 806, 810 (5 Cir.1972), cert. den. 410 U.S. 914, 93 S.Ct. 959, 35 L.Ed.2d 276 (1973) (alleged violation of right to counsel); Bursey v. United States, supra, 466 F.2d at 1081-88 (rejecting government's claim that first amendment rights of freedom of press and association are applied less rigorously to immunized witnesses before a grand jury). See generally, Comment "Rights of Grand Jury Witnesses," 48 N.Y.U.L. Rev. 171 (1973).
Moreover, it is apparent under federal precedents that the courts have a role in overseeing grand jury operations. United States v. Dionisio, 410 U.S. 1, 9, 93 S.Ct. 764, 769, 35 L.Ed.2d 67, 76-77 (1973); Branzburg v. Hayes, 408 U.S. 665, 689, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626, 644 (1972); Robert Hawthorne, Inc. v. Director of Int. Rev., 406 F. Supp. 1098, 1115 (E.D. Pa. 1976); In re Grand Jury Witness Subpoenas, 370 F. Supp. 1282, 1284 n. 3 (S.D. Fla. 1974). This power has been held sufficient *587 to warrant judicial review of a wide variety of grand jury abuses,[3] with at least one court holding that under such authority a court would have the power to vacate an order immunizing a witness. Matter of Doe, supra.
On the state level, our courts would seem to have equally broad authority under their supervisory role to check abuses stemming from the use of immunity before a grand jury. It has been repeatedly stated that the grand jury is an arm of the court. State v. Smith, 102 N.J. Super. 325, 336 (Law Div. (1968)), aff'd 55 N.J. 476, cert. den. 400 U.S. 949, 91 S.Ct. 232, 27 L.Ed.2d 256 (1970); In re Jeck, 26 N.J. Super. 514 (App. Div. 1953), certif. den. 13 N.J. 429 (1953); O'Regan v. Schermerhorn, 25 N.J. Misc. 1, 19 (Sup. Ct. 1946). Additionally, the courts' supervisory role over state grand juries is specifically set forth by R. 3:6-11(b) and N.J.S.A. 2A:73A-6.
Nevertheless, while a court may refuse to issue an order which is inherently unfair or which would deprive a witness of some constitutional right, I cannot accept the conclusion that the instant order should have been denied for the reason that the prosecutor did not need Tuso's testimony in order to obtain an indictment against his co-conspirator.[4] This reasoning, if adopted, would encourage, or even require, a prosecutor to obtain an indictment based on *588 information which is insufficient to sustain a conviction at trial. Although cases in this State generally have adhered to the rule that an indictment may be based upon evidence which is inadmissible at trial, compare, State v. Laws, 50 N.J. 159, 182 (1967), cert. den. 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384, modified 51 N.J. 494 (1968); State v. Grundy, 136 N.J.L. 96, 99 (Sup. Ct. 1947); State v. Dayton, 23 N.J.L. 49, 56 (Sup. Ct. 1850); State v. Ferrante, 111 N.J. Super. 299, 304-06 (App. Div. 1970); with, State v. Costa, 109 N.J. Super. 243 (Law Div. 1970) (indictment almost exclusively based upon hearsay dismissed); State v. Chandler, 98 N.J. Super. 241 (Cty. Ct. 1967) (dismissing indictment based solely on the prosecutor's investigative file), this rule is of doubtful wisdom and has been questioned by numerous judges and commentators. See United States v. Umans, 368 F.2d 725, 730 (2 Cir.1966), cert. granted 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872 (1967), dismissed as improvidently granted, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255, reh. den. 389 U.S. 1025, 88 S.Ct. 583, 19 L.Ed.2d 675 (1967); United States v. Payton, 363 F.2d 996, 999-1000 (2 Cir.1966) (Friendly, J., dissenting); United States v. Arcuri, 282 F. Supp. 347, 349 (E.D.N.Y. 1968), aff'd 405 F.2d 691 (2 Cir.1968), cert. den. 395 U.S. 913, 89 S.Ct. 1760, 23 L.Ed. 2d 227 (1969) (holding that an indictment based solely on hearsay evidence would be dismissed if "better evidence was readily available for presentation to the grand jury."); "Report on the Grand Jury," 100 N.J.L.J. 393, 407-08 (May 12, 1977); The American Bar Association Project on Standards for Criminal Justice, Standard Relating to the Prosecution Function, § 3.6(a) (Approved Draft, 1971). Since this rule impedes the grand jury's ability to protect persons from having to stand trial needlessly, courts should require, rather than prohibit, that indictments be supported by evidence which may be introduced at trial. See United States v. Lovasco, ___ U.S. ___, ___, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).
*589 Furthermore, this is not a case where the prosecutor has sought to use the grand jury "for the purpose of preparing an already pending indictment for trial," Beverly v. United States, 468 F.2d 732, 743 (5 Cir.1972); United States v. Dardi, 330 F.2d 316, 336 (2 Cir.1964), cert. den. 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964), or as a "substitute for discovery."[5]Beverly, supra. While a court would be justified in refusing to compel a witness to testify in such situations, as the majority states, this does not mean that a court should engage in drawing "finespun distinctions between what evidence is sufficient to return a valid indictment and what is necessary to convict." See ante at 580. See Robert Hawthorne, Inc., v. Director of Int. Rev., supra, 406 F. Supp. at 1116, quoting United States v. Johns-Manville Corp., 213 F. Supp. 65, 72 (E.D. *590 Pa. 1962) (inquisitorial power of grand jury should be curtailed only in clearest case of abuse). Under the Appellate Division's holding a court would have to consider the relevancy of each question, a function which it was not intended to exercise under the immunity act. Compare In re Kilgo, supra, 484 F.2d at 1218 (holding that the court is not authorized to consider relevancy where immunity has been authorized under a statute which is not limited to certain, enumerated crimes) with cases ante at 585, n. 2.
Accordingly, I do not read the majority as foreclosing a court from exercising its constitutional duty to review the propriety of an order compelling a witness to testify. While I reiterate my plea for transactional immunity, I note that even under the present immunity statute a court should not leave an immunized witness totally unprotected. Though it exercises a ministerial role in reviewing the Attorney General's conclusion that an order would be in the public interest, the constitutionality of that order is for the court alone to decide.
HUGHES, C.J., concurring in the result.
For reversal  Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER and Judge CONFORD  6.
Dissenting  Justice PASHMAN  1.
NOTES
[1] Subsequent to oral argument herein Tuso was tried and convicted. Since time for review of the conviction has not expired it cannot be said that Tuso no longer has any interest in sustaining the judgment of the Appellate Division herein.
[2] Lest there be any misunderstanding, nothing in this opinion is intended to disparage the full authority of the Court to correct any fundamental unfairness or transgression of a witness's rights or privileges under the self-incrimination principle arising out of any action of a prosecuting official or a Grand Jury.
[1] Although the Deputy Attorney handling the D'Anastasio grand jury did appear as a witness in the Tuso trial, he did not indicate whether he would have done so if Tuso had testified at the grand jury proceeding.
[2] Additionally, those cases which have construed provisions limiting the use of immunity to specific crimes, uphold judicial authority to determine whether the subject matter of the questioning is related to the investigation for which immunity was granted. See Bursey v. United States, 466 F.2d 1059, 1075-76 (9 Cir.1972); In Re Bart, 113 U.S. App. D.C. 54, 304 F.2d 631, 636 (D.C. Cir.1962); In Re Vericker, 446 F.2d 244 (2 Cir.1971); In re Kilgo, supra, 484 F.2d at 1220 (dictum). This power is also present where immunity has been granted in connection with a Congressional investigation. See Application of U.S. Senate Select Com. on Pres. Cam. Act, 361 F. Supp. 1270, 1279 (D.D.C. 1973).
[3] In Robert Hawthorne, Inc. v. Director of Int. Rev., supra, the court listed a long line of federal precedents which have held that a court has the power to review grand jury abuses involving prejudicial remarks and questioning, prosecutorial domination, inducement of perjury or contempt, manipulation of situs, intimidation or harassment, interference with the attorney-client relationship, and post-indictment attempts to gather evidence. 406 F. Supp. at 1115, n. 29.
[4] Although I would hold that the order was unconstitutional since it failed to provide for transactional immunity, I recognize that the trial court would be bound by the previous decisions of this Court upholding use immunity. See In re Zicarelli, 55 N.J. 249 (1970), aff'd 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); State v. Vinegra, supra.
[5] The Appellate Division emphasized the fact that the Deputy Attorney General had conceded during oral argument that he had sufficient information to obtain an indictment against D'Anastasio, but that he desired to obtain Tuso's testimony in order to secure a conviction at trial. 140 N.J. Super. at 509. However, the Deputy Attorney General argued that much of its evidence against the co-conspirator was inadmissible and that, in any event, the extent of the co-conspirator's involvement in the illegal scheme was not known. Even assuming that an indictment could have been obtained without Tuso's testimony, the State was certainly entitled to utilize Tuso's testimony at the grand jury proceeding as a means of fully investigating the alleged illegal activities. See In re Russo, supra, 448 F.2d at 374 (an order compelling a witness to testify may be issued even after an indictment has been handed down where there is a possibility that additional defendants or criminal acts may be discovered). While there has been increasing criticism of such powers, United States v. Lardieri, 506 F.2d 319, 323-24 (3 Cir.1974); Robert Hawthorne, Inc., v. Director of Int. Rev., supra, 406 F. Supp. at 1114, n. 28; "Report on the Grand Jury," 100 N.J.L.J. 369, n. 6 and accompanying text, there is still virtual unanimity that such authority is incident to the grand jury's normal role. See, e.g., United States v. Calandra, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974); Branzburg v. Hayes, supra, 408 U.S. at 688, 92 S.Ct. at 2660, 33 L.Ed.2d at 643; In re Grand Jury Proceedings, 525 F.2d 151, 157 (3 Cir.1975). In re Addonizio, 53 N.J. 107, 124 (1968).