Burton B. Roberts, J.
This three-count criminal contempt (Penal Law, § 215.51) indictment was tried before me without a jury upon a series of stipulations and the minutes of defendant’s Grand Jury appearance. The defense rested without presenting any evidence and moves for a dismissal of the indictment or a verdict of acquittal.
The facts, therefore, are not in dispute. On January 28, 1972, Robert Breindel was called before a quorum of a lawfully constituted Grand Jury investigating illegal gambling and criminal usury, and he was duly sworn. An Assistant District Attorney immediately informed him of the nature and scope of the proceedings and told him that by testifying he would receive 1 ‘ complete, full transactional immunity ’ ’ as defined in subdivision 1 of GPL 50.10, which was read to him. Breindel indicated that he understood the scope of the investigation and stated that the concepts of immunity, perjury and contempt had been explained to him by his lawyer, who was present outside the Grand Jury room. When the substantive examination began, however, he met the first question posed to him with a recitation of three reasons, discussed on their merits below, why his counsel deemed any immunity conferred upon him inadequate to replace his Fifth Amendment privilege. Then he added: ‘ ‘ I also request any information as to whether any *736 conversations of mine have been the subject of wiretapping or any electronic devices
Not undertaking to reply to this “ request ”, the prosecutor repeated the pending question. Breindel refused to answer this and each of the 15 subsequent interrogatories posed to him, on Fifth Amendment grounds. Three of these questions, conceded by defendant to have been relevant and material to the investigation (Matter of Koota v. Colombo, 17 N Y 2d 147), form the basis for the counts of the indictment.[1]
Defendant has been permitted to file a written brief. A threshold contention is that the explanation of the immunity grant to him by the Assistant District Attorney was inadequate. This allegation is difficult to fathom under these facts, where defendant testified in the Grand Jury that he understood the concepts of immunity, perjury and contempt. (Cf. People v. Mulligan, 29 N Y 2d 20, 23.) While it is true that a witness who is a potential criminal defendant must be advised that he has been granted immunity in displacement of the privilege against self incriminatiop and should not be misadvised concerning the scope of the immunity (People v. Masiello, 28 N Y 2d 287, 291), the prosecutor herein informed Breindel in so many words that he had “ transactional immunity” and read the pertinent statute to him. Nothing more is necessary when the witness is represented and advised by a lawyer. (Id.)
Defendant next submits that the statutes under which immunity was offered to him violate constitutional standards for the three reasons that he articulated before the Grand Jury:
First, he professes that the use of the word “conviction” instead of the word “prosecution” in subdivision 1 of CPL 50.10[2] leaves him open to the risk of subsequent prosecutorial *737 harassment. Needless to say, such an unlikelihood, which he ■ offers no factual basis to support, is equally (though remotely) possible under either wording of the statute. “It is well established that the [Fifth Amendment] privilege protects against real dangers, not remote and speculative possibilities.” (Zicarelli v. New Jersey Investigation Comm., 406 U. S. 472, 478). Nor does the wording complained of otherwise fail to meet Fifth Amendment standards. “ The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted.” (Kastigar v. United States, 406 U. S. 441, 453).
Second, he states that the limitation of the scope of the immunity under CPL 190.40[3] to answers that are “responsive” violates the Due Process Clause of the Fourteenth Amendment because it is too vague. Zicarelli v. New Jersey Investigation Comm. (406 U. S. 472, 477, supra) is a clear statement to the contrary under a similar New Jersey statute which, like its counterpart here, ‘1 is not a penal statute that requires an uncounseled decision by a layman as to what course of action is lawful to pursue [and] is not a trap for the unwary; rather it is a barrier to those who would intentionally tender information not sought in an effort to frustrate and prevent criminal prosecution.” Breindel expressed no doubts concerning the scope of the investigation; the questions asked were concededly material and he had access to counsel if he thought they were not. His rights in this regard were, therefore, fully protected. (People v. Ianniello, 21 N Y 2d 418, 425.)
Third, he argues that the existence of a “ use ” immunity statute in the Federal jurisdiction justified his refusal to answer questions in this State proceeding under a grant of transactional immunity. This notion was recently reexamined and rejected in Kastigar v. United States (406 U. S. 441, supra), just as it formerly did not survive Murphy v. Waterfront Comm. (378 U. S. 52). (See Matter of Gold v. Menna, 25 N Y 2d 475, 481.)
In the alternative, defendant maintains that even if the above grounds do not avail him on their merits, the fact that he raised them before the Grand Jury indicates that his stance *738 before that body was not contumacious but rather one of “forthright and honest” concern over the potential violation of his Fifth Amendment rights, an attitude which, he avers, negates the existence of the requisite intent. Subdivi- . sion 1 of CPL 190.40 provides, however,, that ‘ ‘ Every witness in a grand jury proceeding must give any evidence legally requested of him regardless of any protest or belief on his part that it may tend to incriminate him” (emphasis added). To accept defendant’s argument would be to eliminate the contempt sanction for any witness representéd by an imaginative lawyer alert to issues pending in appellate courts. Witness the close similarity between the reasons listed, in Breindel’s' Grand Jury statement and the points, just discussed, which were sub judice in Kastigar and in Zicarelli at the time defendant appeared before the Grand Jury, a circumstance indicating that what defendant now terms a good faith concern over potential prosecutions was at the time a legal gamble in an ¿ttempt to thwart the Grand' Jury. Having rolled the dice ánd lost, he may not now be heard to complain.
In establishing the existence of.the requisite intent where, the only evidence consists of the contemnor’s Grand Jury testimony (cf. People v. Renaghan, 40 A D. 2d 150), it is sufficient merely to find, as I do, that Breindel’s -refusal to answer questions was the product of a rational choice (People v.Zweig, 32 A D 2d 569; People v. Woodruff, 26 A D 2d 236, affd. 21 N Y 2d 848). The fact that this choice may have been predicated upon the advice of counsel is irrelevant. (People v. Colombo, 32 A D 2d 812, affd. 25 N Y 2d 641, vacated on other grounds 400 U. S. 16; cf. Matter of Grand Jury [Cioffi], 10 A D 2d 425, affd. 8 N Y 2d 220.)
Defendant’s next contention is that the failure of the Assistant District Attorney, to answer his inquiry concerning electronic surveillance constitutes a defense to this contempt prosecution, citing Gelbard v. United States (408 U. S. 41). In Gelbard, two Federal Grand Jury witnesses, one of whom was told by the prosecutor prior to being questioned that he had been the subject of electronic surveillance, and another who, without having received such notice, specifically objected to the questioning as based upon illegal eavesdropping, were both permitted to invoke the prohibition of a Federal statute (U. S. Code, tit. 18, § 2515) as a defense to a civil contempt charge. The First Department has recently decided, based .upon Gelbard and upon Matter of Cali v. United States (464 F. 2d 475), that a defendant who failed to object to the source *739 of the questions at his Grand Jury appearance had the right to a suppression hearing at his trial for contempt inasmuch as he could not have obtained such relief at the Grand Jury stage. (People v. Mulligan, 40 A D 2d 165.) It is therefore apparent that Breindel, who was served subsequent to his Grand Jury appearance with notice pursuant to CPL 700.50 that he had been the subject of electronic surveillance, would have been entitled to such a hearing prior to the trial[4] but that even if the prosecutor had answered his request for information in the Grand Jury he would not have been entitled to a suppression hearing during the pendency of those proceedings. (Also, see, United States ex rel. Rosado v. Flood, 394 F. 2d 139; United States ex rel. Ciffo v. McCloskey, 273 F. Supp. 604.) This being so, a response by the prosecutor could not have served any other legitimate purpose of this witness who, having been granted full and complete transactional immunity, was under a legal obligation to testify, under pain of contempt (CPL 190.40). I hold, therefore, that the People are under no obligation to disclose to a Grand Jury witness that the questions about to be propounded are the product of electronic surveillance. ‘ ‘ A balance must be struck between the due functioning of the Grand Jury system and a defendant’s rights under the eavesdropping statutes.” (People v. Mulligan, 40 A D 2d 165, 166, supra). The integrity of the Grand Jury’s fact-finding process is what is at stake here. Providing an unco-operative or hostile witness with the type of information requested in this ease permits him to tailor his testimony to matters already known to the Grand Jury, thereby defeating the purpose of calling him. Such disclosure also jeopardizes the secrecy of the investigation and hence its chances of success with respect to the targets thereof.
I have examined defendant’s other contentions and find them to be without merit. With respect to defendant’s claim that he cannot be convicted of the second count herein because he was not formally directed to answer the question by the foreman of the Grand Jury, suffice it to say that the ritual of section 619-c of the former Códe of Criminal Procedure, under which immunity was not effective unless the witness claimed his privilege and was voted immunity by the Grand Jury and was ordered to answer the particular question by the foreman, is precisely the procedure CPL 190.40 was designed to avoid. *740 (See Denzer, Practice Commentary, McKinney’s Cons. Laws óf N. Y., Book 11A, CPL 190.40, p. 122.)
For the foregoing reasons, defendant’s motion to dismiss the indictment is denied.
I am convinced beyond a reasonable donbt that defendant was duly sworn before a quorum of a lawfully constituted Grand Jury and thereafter intentionally and contumaciously refused to answer legal and proper interrogatories after having been clearly and understandingly granted full and complete transactional immunity.
I therefore find defendant guilty of criminal contempt in the first degree, all three counts of the indictment.

. To wit:
“Q. Mr. Breindel, are you and Ruby Stein and Martin Kahn partners in a gambling bookmaking scheme and enterprise which accepted bets on horse races and sports events totaling in excess of 50 million dollars a year ? ” (First Count.)
''Q. Mr. Breindel, are you known by the name of 'Twiggy’?” (Second Count.)
" Q. Mr. Breindel, at this time are you charging Mathew Pisicano a sum of money greater than 25 per cent on any money he now owes you?” (Third Count.)

. This subdivision defines “ immunity ” as follows:
'“Immunity.’ A person who has been a witness in a legal proceeding, and who cannot, except as otherwise provided in this subdivision, be convicted of any offense or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence therein, possesses ‘ immunity ’ from any such conviction, penalty or forfeiture.”

. CPL 190.40 provides as follows:
“ 2. A witness who gives evidence in a grand jury proceeding receives immunity unless: * * *
“(b) Such evidence is not responsive to any inquiry and is gratuitously given or volunteered by the witness with knowledge that it is not responsive.”

. A suppression motion, made subsequent to trial because of the claimed inadvertent failure of defendant’s original counsel to inform trial counsel of the service of the notice, is presently pending before me.