845 A.2d 739

IN THE MATTER OF THE ESSEX COUNTY GRAND JURY INVESTIGATION INTO THE FIRE AT SETON HALL UNIVERSITY IN SOUTH ORANGE, NEW JERSEY ON JANUARY 19, 2000.

Superior Court of New Jersey
Law Division

Decided March 28, 2003.

270

274

Chief Assistant Prosecutor *Norman Menz* and Director *Jeffrey R. Cartwright,* for the State (D*onald C. Campolo,* Acting Essex County Prosecutor).

*Salvatore T. Alfano,* for Joseph E. Lepore.

*Gerald E. Fusella,* for Lauren Lepore.

FALCONE, A.J.S.C.

This matter comes before the court on motion of Joseph E. Lepore and Lauren Lepore to quash the subpoenas compelling them to testify on or about November 21, 2002, before the Special Grand Jury investigating arson, murder and conspiracy to commit the same.[1]

On the return date of the subpoenas, Joseph E. Lepore and Lauren Lepore were advised for the first time that indictments had been returned against them by the Special Grand Jury. Neither Movant has been indicted for the offenses of arson, murder or conspiracy to commit the same.[2]

Upon learning that indictments had been handed down against them, both Joseph E. Lepore and Lauren Lepore objected to having to testify before the very same Special Grand Jury that handed down their indictments. In a closed hearing, counsel for each Movant immediately appeared before the court to object to the proceedings. Counsel for the State agreed that the Movants need not testify that date so that counsel could file formal papers contesting Movants' appearance before the Special Grand Jury.

On or about November 27, 2002, counsel for the Movants filed an application seeking an order to quash the subpoenas to appear before the Special Grand Jury, on the grounds that compelling Movants to testify would violate their Fifth Amendment privilege against self-incrimination, their Sixth Amendment right to counsel, and their Fourteenth Amendment right to due process. In addition, Movants requested an order unsealing the indictment and requiring the State to provide discovery relating to the same.

---

[1] Mr. Fusella, attorney for Lauren Lepore joins in *all* arguments set forth by counsel for Joseph E. Lepore at oral argument *and* in the supporting brief submitted to this Court.

[2] The Movants were informed of the nature and cause of the indictment pursuant to a Court order entered October 24, 2002. The specific factual details remain under seal.

For the reasons set forth herein, the relief sought by the Movants is denied.

*I*

In the early morning hours of January 19, 2000, a fire broke out on the third floor of Boland Hall, a dormitory located on the South Orange Campus of Seton Hall University. Three first year students were killed and over 50 other students were injured, a number of them severely and permanently.

Since experts believed the fire had been intentionally set, the Office of the Essex County Prosecutor spearheaded a multi-agency investigation. On July 17, 2001, after an 18–month investigation, Acting Essex County Prosecutor Donald C. Campolo petitioned the Court, "...to empanel a Special Grand Jury to hear evidence heretofore gathered ...and to conduct an investigation" into, *inter alia,* the "cause and origin of the fire and the identity of the person or persons responsible for setting the fire." The petition further stated:

> During the course of this Office's investigation over two hundred witnesses have been interviewed and in excess of one hundred twenty-five statements have been taken. These investigative efforts coupled with small and large scale fire testing have provided a large volume of information concerning the facts and circumstances leading up to the fatal fire and the identity of the person or persons responsible for these events.

By Order dated July 27, 2001, this court granted the Prosecutor's request. The Special Grand Jury was empaneled on October 12, 2001 for an initial term of twenty weeks.[3] Prior thereto, on or

---

[3] The Prosecutor's Office has applied for numerous Orders extending the Special Grand Jury. The Special Grand Jury was empaneled on October 12, 2001. On March 15, 2002, this Court issued an order extending the Special Grand Jury's term until June 13, 2002. On June 13, 2002, a second extension was granted extending the Special Grand Jury until September 13, 2002. Based upon numerous delays and interruptions in the ability of the Prosecutor's Office to present witnesses and evidence, this Court extended the term, for a third time, until December 13, 2002. Thereafter, a fourth extension was granted, extending the term until March 13, 2003. And finally, a fifth extension was granted, extending the term until June 11, 2003.

about August 21, 2001, upon application of the Prosecutor's Office, an order to compel testimony of Joseph E. Lepore, under a grant of immunity, was issued by the Honorable R. Benjamin Cohen, P.J.Ch. On August 28, 2001, Joseph E. Lepore, father of Movant Lauren E. Lepore and Joseph T. Lepore (a target of the investigation),[4] appeared before a grand jury to answer questions about conversations he may have had with his son about the fire. Notwithstanding the grant of immunity, he refused to answer questions based upon a "parent-child" privilege. Immediately thereafter, the Prosecutor's Office filed for an order seeking enforcement of the August 21, 2001 order. On or about November 28, 2001, this Court heard oral argument on the issue of the parent-child privilege and concluded that no such privilege exists in New Jersey. On or about January 14, 2002, the Appellate Division denied Movant Joseph E. Lepore's motion for leave to appeal. On or about March 19, 2002, the Supreme Court denied the Movant's application for leave to appeal.

To date, Joseph E. Lepore has not testified before the Special Grand Jury.

As per Movant Lauren Lepore, she was summoned before the Special Grand Jury on August 17, 2001. At that time and on the advice of counsel, she refused to answer any questions in reliance on the Fifth Amendment privilege against self-incrimination. The prosecutor asking the questions of Ms. Lepore advised the court of what had occurred and that he had ordered a transcript of her appearance. Accordingly, a hearing was scheduled for September 10, 2001 to ascertain whether or not Ms. Lepore had properly invoked her Fifth Amendment privilege.

In order to justify invocation of the Fifth Amendment privilege, the witness need only demonstrate that the answer to a question, in the setting in which it is asked, is such that a responsive answer might produce an incriminating disclosure. *In*

---

[4] According to information supplied by the Prosecutor's Office, target Joseph T. Lepore was born on October 22, 1980. Thus, at the time of the fire, he was 19 years old.

*re Addonizio,* 53 *N.J.* 107, 116, 248 *A.*2d 531, 536 (1968); *In re Boiardo,* 34 *N.J.* 599, 603, 170 *A.*2d 816, 818 (1961); *In re Pillo,* 11 *N.J.* 8, 19, 93 *A.*2d 176, 181 (1952); *see also N.J.R.E.* 502; *N.J.S.A.* 2A:84A–18. On the hearing date, Ms. Lepore was asked to explain why a response to each question, previously asked of her before the Special Grand Jury, would tend to incriminate her. Specifically, the Court advised Ms. Lepore, "I'm going to go over this, question by question, and I'm going to give you an opportunity to explain to me why you believe answering the question would incriminate you."[5] Based on the explanation given, this Court concluded that Ms. Lepore, "did not have a legitimate apprehension, and as a result ... does not have a firm legal basis for invoking the privilege, which means if summoned back before the Grand Jury [she is] ordered to answer the questions."[6] As a result of this ruling, Ms. Lepore was directed to continue her testimony before the Special Grand Jury.

Not long thereafter, the Special Grand Jury returned an indictment against the Movants (presently under seal) for offenses related to interference with the conduct of the investigation. On September 12, 2002, subsequent to the return of the indictment, the Special Grand Jury requested to hear testimony from the Movants in connection with the fatal fire at Seton Hall.

It is undisputed by all parties that neither Joseph E. Lepore nor Lauren Lepore has ever been a *target* of the Special Grand Jury's investigation. The State has not indicated nor suggested that either Movant was anywhere near the scene of the fire in question, or in any way participated in the events that transpired on that fatal day. Additionally, Movants enjoy a grant of immunity in exchange for their truthful testimony before the Special Grand Jury. The Prosecutor's Office has also certified[7] that they will not

---

[5] T5–13 to 16. Transcript of hearing held on September 10, 2001.

[6] T29–20 to 25. Transcript of hearing held on September 10, 2001.

[7] *See R.* 1:4–8:

ask any questions related to the Movants' sealed indictment [8], *if*
and *when* the Movants appear before the Special Grand Jury
investigating the fire at Seton Hall.

Notwithstanding this representation, the Movants *presuppose*
that the Special Grand Jury *will* ask them questions about their
current charges and that their testimony will result in additional
criminal charges. Based upon these assumptions, the Movants
request that the court grant them what amounts to a *blanket*
exemption from having to appear before the Special Grand Jury
and for disclosure of the specific facts contained in their respective
indictments. The court is not convinced that this relief is warrant-
ed.

## II

 Our Supreme Court has recognized that, "[t]he Grand
Jury has always occupied a high place as an instrument of justice
in our system of criminal law." *State v. Del Fino,* 100 *N.J.* 154,
165, 495 *A.2d* 60, 65 (1985) (*citing U.S. Const. amend* V; *N.J.*

---

(a) Effect of Signing, Filing or Advocating a Paper. The signature of an
attorney . . . constitutes a certificate that the signatory has read the pleading,
written motion or other paper. By signing . . an attorney . . . certifies to
the best of his or her knowledge, information, and belief, formed after an
inquiry reasonable under the circumstances:
(1) the paper is not being presented for any improper purpose . . .
(2) the claims, defenses, and other legal contentions therein are warranted
by existing law . . .
(3) the factual allegations have evidentiary support . . .

 \* \* \* \* \* \* \* \*

Additionally, RPC 3.3 Candor Toward Tribunal, states:
(a) A lawyer shall not knowingly:
(1) make a false statement of material fact or law to a tribunal;

 \* \* \* \* \* \* \* \*

[8] The prosecutor states:

"Here, the defendants were not targets of the investigation and the question-
ing will not go to the substance of the indictment . . . The substance of the
pending grand jury investigation is the murder, arson and conspiracy
offenses, not the previous charges against the defendant."
(T12–1 to 6 of Prosecutor's brief).

*Const.* art. I, ¶ 8). The grand jury serves the dual purpose of determining whether an accused should be subjected to trial while simultaneously serving to safeguard citizens against arbitrary, oppressive and unsupported criminal proceedings. *See Branzburg v. Hayes,* 408 *U.S.* 665, 686–89, 92 *S.Ct.* 2646, 2659–61, 33 *L.Ed.*2d 626, 643 (1972); *Trap Rock Indus., Inc. v. Kohl,* 59 *N.J.* 471, 487– 88, 284 *A.*2d 161, 169–70 (1971), *cert. denied,* 405 *U.S.* 1065, 92 *S.Ct.* 1500, 31 *L.Ed.*2d 796 (1972). Additionally, the Court's supervision of the grand jury is limited. *See State v. Murphy,* 213 *N.J.Super.* 404, 410, 517 *A.*2d 501, 504–05 (App.Div.1986). This is a result, "of the significant role of the grand jury in the administration of criminal justice, [and because] of the courts [ ] marked reluctance to intervene in the indictment process." *State v. Hogan,* 336 *N.J.Super.* 319, 338, 764 *A.*2d 1012, 1022 (App.Div. 2001); *see also State v. Perry,* 124 *N.J.* 128, 168–69, 590 *A.*2d 624, 644 (1991). Early disclosure and review of the grand jury's activities may frustrate an investigation by allowing individuals to tamper with evidence and witnesses, as well as allowing suspects to flee from capture and for the potential harassment of jurors. *See Douglas Oil Co. v. Petrol Stops N.W.,* 441 *U.S.* 211, 218–19, 99 *S.Ct.* 1667, 1672–73, 60 *L.Ed.*2d 156, 164–65 (1979). Similarly, individuals' reputations may be prematurely and unnecessarily damaged if in fact the investigation leads to exoneration or a no-bill of indictment. *See State v. Clement,* 40 *N.J.* 139, 143, 190 *A.*2d 867, 869 (1963).

Of equal importance is the historical independence of the grand jury. The grand jury has acted as an independent investigatory body, free from the constraints of the rules of evidence and procedure. See Murphy, *supra* at 409 *(citing U.S. v. Chanen,* 549 *F.*2d 1306, 1312 (9th Cir.1977), *cert. denied,* 434 *U.S.* 825, 98 *S.Ct.* 72, 54 *L.Ed.*2d 83 (1977); *U.S. v. Stevens,* 510 *F.*2d 1101, 1106 (5th Cir.1975), *reh'g denied,* 512 *F.*2d 1406 (5th Cir.1975)) *See also* (for historical background) *Costello v. U.S.,* 350 *U.S.* 359, 361–62, 76 *S.Ct.* 406, 407, 100 *L.Ed.* 397 (1956); *Blair v. U.S.,* 250 *U.S.* 273, 279–283, 39 *S.Ct.* 468, 470–71, 63 *L.Ed.* 979, 981–83 (1919); *Hale v.*

*Henkel*, 201 *U.S.* 43, 59, 26 *S.Ct.* 370, 372–73, 50 *L.Ed.* 652, 659 (1906).

The creation of the grand jury was based almost entirely upon the need for a body separate from the judiciary and the office of the prosecutor. Moreover, in jurisdictions such as ours, grand jury proceedings are conducted in secret and neither the witnesses appearing before it nor the court are entitled to an itinerary of the grand jury's activities. *See R.* 3:6–7.

■ Based upon the importance of the secrecy of grand jury proceedings, there has been a notable reluctance on the part of the courts and the legislature to formulate standards for grand jury practice and procedure, which could only be implemented by a review process that would inherently breach that secrecy. As stated by the United States Supreme Court: "[a]ny holding that would saddle a grand jury with mini-trials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *U.S. v. Calandra,* 414 *U.S.* 338, 350, 94 *S.Ct.* 613, 621, 38 *L.Ed.*2d 561, 572–73 (1974) (*quoting U.S. v. Dionisio,* 410 *U.S.* 1, 17, 93 *S.Ct.* 764, 773, 35 *L.Ed.*2d 67, 71 (1973)). Additionally, the doctrine of separation of powers cannot be ignored. This places a limitation on the judiciary's authority to review and supervise the conduct of the prosecutor—a member of the executive branch. *See U.S. v. Chanen,* 549 *F.*2d 1306, 1312–13 (9th Cir.1977), *cert. denied,* 434 *U.S.* 825, 98 *S.Ct.* 72, 54 *L.Ed.*2d 83 (1977).

■ Despite these limitations, a subpoenaed witness may motion to quash a subpoena or may refuse to answer "specific questions", based upon a valid claim of privilege.

### III

■ The prosecutor's good faith determination as to whether a particular witness is or is not a *target* will prevail, and the burden is on the witness to demonstrate that the inquiry *was* a ruse to induce the witness to unwittingly give evidence against himself.

See State v. Cattaneo, 123 N.J.Super. 167, 172, 302 A.2d 138, 141 (App.Div.), certif. denied, 63 N.J. 324, 307 A.2d 97 (1973). See also State v. Vinegra, 134 N.J.Super. 432, 436, 341 A.2d 673, 675 (App.Div.1975), aff'd, 73 N.J. 484, 376 A.2d 150 (1977); State v. Grundy, 136 N.J.L. 96, 98, 54 A.2d 793, 795 (Sup.Ct.1947); State v. Maiorana, 240 N.J.Super. 352, 364, 573 A.2d 475, 481 (App.Div. 1990), certif. denied, 127 N.J. 327, 604 A.2d 601 (1991).

■ Targets ordinarily should not be required to appear before the same grand jury that has been empaneled to determine whether to indict that target. Courts have suggested that if the target of an investigation is compelled to give incriminating evidence before a grand jury, this same grand jury cannot permissibly indict for the offenses to which the target has confessed. See Goldberg v. U.S., 472 F.2d 513, 516 (2nd Cir.1973); Jones v. U.S., 342 F.2d 863 (D.C.Cir.1964); U.S. v. Tane, 329 F.2d 848 (2nd Cir.1964); U.S. v. Lawn, 115 F.Supp. 674 (S.D.N.Y.1953); U.S. v. Roth, 208 F.2d 467 (2nd Cir.1953). Movants do not argue, nor could they, that the Special Grand Jury cannot continue an investigation once an indictment has issued, if the purpose of the investigation is to identify further crimes committed by the indictees or to name unnamed actors. See State v. Johnson, 287 N.J.Super. 247, 259, 670 A.2d 1100, 1105–06 (App.Div.1995).

Under the circumstances here present, the prosecutor has certified that the Movants are not the targets of the investigation dealing with the charges of arson, murder or conspiracy to commit the same. The court is entitled to rely upon this good faith certification. See Cattaneo, supra at 172, 302 A.2d at 141. In addition, since the Movants have been granted immunity, incriminating statements cannot be used against them. Thus, the Movants cannot establish the standard in Cattaneo that the prosecutor orchestrated a ruse to induce the Movants to unwittingly give evidence against themselves. Ibid.

■ Even if the Movants are considered targets and did not possess immunity, target status alone would not mandate a blanket exclusion from further appearances before the grand jury—

especially where the grand jury is investigating crimes different from those for which Movants have been indicted. *See State v. Porro,* 175 *N.J.Super.* 49, 51, 417 *A.*2d 573, 574 (App.Div.1980); *U.S. v. Doss,* 563 *F.*2d 265, 276–78 (6th Cir.1977).

In 1977, our Supreme Court decided *In re Petition to Compel Testimony of Tuso,* 73 *N.J.* 575, 376 *A.*2d 895 (1977), a case which is relevant in this matter. In *Tuso,* the Attorney General wanted to question an indicted non-target witness before a grand jury. The witness, who had the protection of immunity, had previously been indicted by a different grand jury. *Id.* at 575, 376 *A.*2d at 895. Despite the fact that the past indictment was related to the same transactions being investigated by the new grand jury, the court allowed the State to question the witness. *Ibid.* The court held that the fact, "that [the] grand jury witness had been indicted in connection with the same transactions being investigated was irrelevant in determining the fairness of ordering the witness to appear before the grand jury inasmuch as the witness was not a target of the investigation and had the benefit of statutory immunity." *Id.* at 580, 376 *A.*2d at 897.

Based upon the case law proffered by the Movants, if the Special Grand Jury were to inquire about crimes for which the Movants have already been indicted, or otherwise abuse the grand jury process, the Movants would apparently have standing to contest the supporting evidence—via a motion to suppress, as well as possible referral to the ethics committee, remedies that the Movants clearly recognize as proper. Specifically, the Movants rely upon *State v. Porro,* which held that:

> While concededly improper, the calling of defendant before the grand jury after the return of the indictment was not an invasion of the independence of the grand jury. *See State v. Schamberg,* 146 *N.J.Super.* 559, 370 *A.*2d 482 (App.Div.1977), *certif. denied,* 75 *N.J.* 10, 379 *A.*2d 241 (1977) * * *If the assignment judge was of the view that the prosecutor's conduct was so egregious as to call for disciplinary action, he might have referred the matter to the District Ethics Committee or the Administrative Director of the Courts. *See R.* 1:20. Dismissal of the indictment was too drastic a remedy; suppression of the improperly elicited testimony would have been a sufficient and more appropriate remedy. *[Porro,* 175 *N.J.Super.* at 52, 417 *A.*2d at 575].

Movants' reliance upon the Sixth Circuit opinion in *U.S. v. Doss,* supra, is misplaced in light of the fact that the Movants are not targets. In my view, the court's opinion in *Doss* is limited to *targets* who are compelled to testify before the grand jury empaneled to investigate the targets' *own criminal acts,* as opposed to the criminal acts of third-parties. In pertinent part the court held that:

> We find no constitutional, statutory or case authority for employment of the grand jury as a discovery instrument to help the government prepare evidence to convict an already indicted defendant. Such a use of the grand jury would pervert its constitutional and historic function. [*Id.* at 276 (*citing U.S. v. Lawn,* 115 *F.Supp.* 674, 677 (S.D.N.Y.1953); *Boone v. People,* 148 *Ill.* 440, 448–50, 36 *N.E.* 99 (1894); *State v. Clifford,* 86 *Iowa* 550, 53 *N.W.* 299, 300 (1892); *In re Nat'l Window Glass Workers,* 287 *F.* 219, 227–28 (N.D.Ohio 1922); *U.S. v. Kimball,* 117 *F.* 156, 167 (1902))].

The court also stated that:

> Our point, of course, is not that defense lawyers should be admitted to grand jury rooms, *but rather that indicted defendants must not be subjected to questioning before grand juries about the offenses upon which they await trial.* [*Doss,* 563 *F.*2d at 276, n. 3] (Emphasis added).

Moreover, the Sixth Circuit appears to have no problem with an indicted witness testifying about other matters, not the subject of the specific criminal acts contained in the witness's indictment. Specifically, the court cites a case with a fact pattern similar to the one at bar:

> [in] *U.S. v. George,* 444 *F.*2d 310 (6th Cir.1971), George knew that he had been indicted and what he had been indicted for. The court found that [defendant's appearance before the grand jury was permissible since] he was to be questioned on "new matters" and not the subjects of his indictment. George also knew that he had been promised immunity from prosecution for any incriminating testimony he gave. George was convicted for contempt for refusing to answer any question at all. [*Doss,* 563 *F.*2d at 278].

Thus, it is clear that Movants' reliance on *Doss* is of no assistance to their position. Movants, although indicted, are not targets and will not be compelled to testify about their own indictments.

## IV

It is well recognized that, "[a] court should not undertake to decide a constitutional question unless it is essential to do

so in the disposition of litigation." *State v. Accetturo*, 261 *N.J.Super.* 487, 493–94, 619 *A.2d* 272, 275 (Law Div.1992) (*citing Grant v. Wright*, 222 *N.J.Super.* 191, 197, 536 *A.2d* 319 (App.Div.1988)). *See also In re Petition of N.J. Amer. Water Co.*, 169 *N.J.* 181, 777 *A.2d* 46 (2001); *State Dep't of Env't Protection and Energy v. Dopp*, 268 *N.J.Super.* 165, 632 *A.2d* 1270 (App.Div.1993). "Constitutional questions, more than any other, are not answered except when there is a present, imperative and inescapable need to do so." *Hildebrandt v. Bailey*, 65 *N.J.Super.* 274, 285, 167 *A.2d* 655 (App.Div.1961) (*citing United Pub. Workers of Am. (CIO) v. Mitchell*, 330 *U.S.* 75, 67 *S.Ct.* 556, 91 *L.Ed.* 754 (1946); *International Longshoremen's and Warehousemen's Union, Local 37 v. Boyd*, 347 *U.S.* 222, 74 *S.Ct.* 447, 98 *L.Ed.* 650 (1954)).

 Prior to addressing any substantive constitutional claim, a court must first determine whether the claim alleged is ripe and presents an actual case and controversy. *See State v. Jones*, 198 *N.J.Super.* 553, 558, 487 *A.2d* 1278, 1280–81 (App.Div.1985). Accordingly, the court will not provide benedictions for how litigants should proceed in their affairs or create prophylactic remedies for hypothetical injuries. *See Rybeck v. Rybeck*, 150 *N.J.Super.* 151, 156, 375 *A.2d* 269, 271–72 (App.Div.1977) (*citing N.J. Sports & Exposition Auth. v. McCrane*, 61 *N.J.* 1, 27–28, 292 *A.2d* 545 (The Supreme Court should not entertain the abstract or hypothetical questions, *app. dism.*, 409 *U.S.* 943, 93 *S.Ct.* 270, 34 *L.Ed.2d* 215 (1972), *app. after remand* 62 *N.J.* 248, 300 *A.2d* 337, *cert. denied*, 414 *U.S.* 989, 94 *S.Ct.* 291, 38 *L.Ed.2d* 228 (1973)); *Crescent Pk. Tenants Ass'n v. Realty Eq. Corp. of N.Y.*, 58 *N.J.* 98, 107, 275 *A.2d* 433 (1971); *Sente v. Clifton Mayor and Council*, 66 *N.J.* 204, 205, 330 *A.2d* 321, 321 (1974); *Donadio v. Cunningham*, 58 *N.J.* 309, 325–26, 277 *A.2d* 375, 384 (1971); *DeRose v. Byrne*, 139 *N.J.Super.* 132, 134, 353 *A.2d* 100, 101 (App.Div.1976); *Cf. Montgomery v. Daniels*, 38 *N.Y.2d* 41, 378 *N.Y.S.2d* 1, 340 *N.E.2d* 444, 446–47 (Ct.App.1975); *Gentile v. Altermatt*, 169 *Conn.* 267, 363 *A.2d* 1, 8–9 (1975), *app. dism.* 423 *U.S.* 1041, 96 *S.Ct.* 763, 46 *L.Ed.2d* 631 (1976); *Pinnick v. Cleary*, 360 *Mass.* 1, 271 *N.E.2d*

592, 595 (1971)); *contrast State v. Isaac Allen, Gannett Co., Inc.,*
73 *N.J.* 132, 373 *A.*2d 377 (1977).

Thus, the court must first, "question whether defendants
have sustained or are in immediate danger of sustaining some
direct injury." *State v. Engel,* 249 *N.J.Super.* 336, 363, 592 *A.*2d
572, 585 (App.Div.1991). In *Engel,* The Appellate Division recog-
nized that:

> It is a tenet of our judicial system that courts will not render judgments on
> constitutional questions unless presented in the form of an actual factual or legal
> dispute. *State v. Jones,* 198 *N.J.Super.* 553, 558, 487 *A.*2d 1278 [at 1280–81]
> (App.Div.1985). Deeply embedded in our jurisprudence is the settled principle
> against resolving disputes "in advance of constitutional necessity." *Id.* at 559, 487
> *A.*2d 1278 [at 1281]. Our authority is confined to deciding questions presented in
> an adversary context and in a form capable of resolution through the judicial
> process. *See id.* at 559–560, 487 *A.*2d 1278 [at 1281–82]; *see also Flast v. Cohen,*
> 392 *U.S.* 83, 93, 88 *S.Ct.* 1942, 1950, 20 *L.Ed.*2d 947, 958(1968); *U.S. v. Fruehauf,*
> 365 *U.S.* 146, 157, 81 *S.Ct.* 547, 553–554, 5 *L.Ed.*2d 476, 483 (1961); *Ala. State Fed'n
> of Labor v. McAdory,* 325 *U.S.* 450, 461, 65 *S.Ct.* 1384, 1389, 89 *L.Ed.* 1725, 1734
> (1945); *Muskrat v. U.S.,* 219 *U.S.* 346, 356, 31 *S.Ct.* 250, 253, 55 *L.Ed.* 246, 250
> (1911). In short, we have no "roving commission to seek and destroy unconstitu-
> tionality." *In re Ass'n of Trial Lawyers of America,* 228 N.J.Super. 180, 185, 549
> *A.*2d 446[, 449] (App.Div.1988), certif. denied, 113 N.J. 660, 552 A.2d 180 (1988).
> [*Engel,* 249 *N.J.Super.* at 362–64, 592 *A.*2d at 584–85].

## V

In his brief and during oral argument before this Court, counsel
for Joseph E. Lepore, joined by counsel for Lauren Lepore,
asserted that the Movants would be denied their Fifth Amend-
ment privilege against self-incrimination if compelled to testify
before the same Special Grand Jury that had previously handed
down indictments against them. The Movants are not claiming a
Fifth Amendment privilege as per any specific question posed by
the Special Grand Jury, as is the recognized procedure. *See In re
Addonizio,* 53 *N.J.* 107, 248 *A.*2d 531 (1968); *In re Boiardo,* 34
*N.J.* 599, 170 *A.*2d 816 (1961); *In re Pillo,* 11 *N.J.* 8, 93 *A.*2d 176
(1952). Rather, the Movants wish to assert the privilege as to
totally avoid ever having to appear before this Special Grand Jury.

Despite Movants' grant of immunity, and the prosecutor's certi-
fication that they will not address the Movants' preexisting indict-

ment, the Movants believe that any testimony they provide before the Special Grand Jury will result in additional criminal charges. Thus, without the benefit of a specific set of facts upon which a Fifth Amendment claim could be addressed, the court is being asked to render a decision based on general or mere naked apprehensions of incrimination.

The Fifth Amendment privilege against self-incrimination grants to the individual the right, "not to answer official questions put to her in any ... proceeding, civil or criminal, formal or informal, where the answers might incriminate her in future criminal proceedings." *DYFS v. S.S.,* 275 *N.J.Super.* 173, 179, 645 *A.*2d 1213, 1216 (App.Div.1994) (*quoting Lefkowitz v. Turley,* 414 *U.S.* 70, 77, 94 *S.Ct.* 316, 322, 38 *L.Ed.*2d 274, 281 (1973)). Further, it is clear that the Fifth Amendment protects a witness only with respect to disclosure of past criminal acts and does not give the witness a license to perjure him or herself. *State v. Williams,* 59 *N.J.* 493, 500, 284 *A.*2d 172 (1971); *State v. De Cola,* 33 *N.J.* 335, 349, 164 *A.*2d 729, 736 (1959). *See also Crum v. Brock,* 136 *Miss.* 858, 101 *So.* 704 (1924); *Travelers Fire Ins. Co. v. Wright,* 322 *P.*2d 417 (Okl.1958). It should be further noted that the privilege cannot be asserted by a witness to protect others from possible criminal prosecutions. *See U.S. v. Mandujano,* 425 *U.S.* 564, 571, 96 *S.Ct.* 1768, 1774, 48 *L.Ed.*2d 212, 219 (1976). *See also Rogers v. U.S.,* 340 *U.S.* 367, 71 *S.Ct.* 438, 95 *L.Ed.* 344 (1951); *U.S. v. Murdock,* 284 *U.S.* 141, 52 *S.Ct.* 63, 76 *L.Ed.* 210 (1931); *Hale v. Henkel,* 201 *U.S.* 43, 26 *S.Ct.* 370, 50 *L.Ed.* 652 (1906).

Fortunately for the Movants, they have both been granted "use immunity," therefore their compelled testimony before this grand jury is "immunized" and cannot be used against them. *See Vinegra,* 73 *N.J.* at 520, 376 *A.*2d at 168 (1977) (*citing Kastigar v. U.S.,* 406 *U.S.* 441, 92 *S.Ct.* 1653, 32 *L.Ed.*2d 212 (1972)). In *Kastigar v. U.S.,* Justice Powell, writing for the majority, declared that, "use immunity" provides a sweeping proscription of any use, direct or indirect, of the compelled testimony and any information

derived therefrom. *Id.* at 460, 92 *S.Ct.* 1653. Thus, the Movants can have no fear of being indicted as a result of testifying before this grand jury, *provided they testify truthfully.* A fear that one may commit perjury under oath does not rise to the level of a Fifth Amendment violation, due to the fact that *every* sworn witness risks such prosecution. *See generally Blair v. U.S.,* 250 *U.S.* 273, 39 *S.Ct.* 468, 63 *L.Ed.* 979 (1919); *In re Vince,* 2 *N.J.* 443, 67 *A.2d* 141 (1949). This fear standing alone defines and distinguishes testimony under oath from mere statements. This *duty* to tell the truth is at the crux of our judicial system. The oath is the *only* guard against the submission of false and misleading statements. Perjured testimony has absolutely no useful purpose at all.

As such, there is no legally cognizable basis for immunity from perjury. In *U.S. v. Frumento,* 552 *F.*2d 534 (3rd Cir.1977), a subpoenaed witness, who was granted use immunity, attempted to invoke his Fifth Amendment privilege to avoid having to testify under oath at trial. The Third Circuit held that the witness had no grounds to assert his Fifth Amendment privilege against self-incrimination because use and derivative use immunity is a satisfactory substitute for guarantees of the Fifth Amendment. *Id.* at 540–41

The court in *Frumento,* reiterated compelling language from *U.S. v. Hockenberry,* 474 *F.*2d 247 (3d. Cir.1973), stating:

[a] witness who testifies before a grand jury is required and sworn to tell the truth. The grant of immunity is superimposed upon that requirement. Protection is granted against future injurious use of the *incriminating* truth that the witness is required to speak, *not against any falsehood* that he may utter to avoid the required admission of wrongdoing. Hence, the immunity statute properly permits prosecution for perjury committed in an otherwise immunized statement and also the introduction in evidence of so much of the statement as is essential to establishing the corpus delicti. [*Id. Frumento, supra* at 541] (Emphasis added).

This conclusion has been echoed by the Court of Appeals for the Seventh Circuit, which said, "if the witness commits perjury in giving the compelled testimony, the grant of immunity will not protect him from a perjury prosecution since no immunity attaches to false testimony given pursuant to the immunity order."

*U.S. v. Patrick*, 542 *F.*2d 381, 385 (7th Cir.1976). And similarly, the Court of Appeals for the Second Circuit has stated that, "the immunity granted by the Constitution does not confer upon the witness the right to perjure himself or to withhold testimony." *U.S. v. Tramunti*, 500 *F.*2d 1334, 1342–44 (2nd Cir.1974), *cert. denied*, 419 *U.S.* 1079, 95 *S.Ct.* 667, 42 *L.Ed.*2d 673 (1974).

Our Supreme Court dealt with an issue similar to the one at hand. In *State v. Boiardo*, 34 *N.J.* 599, 170 *A.*2d 816 (1961), a witness gave a statement, under oath and with an attorney present, at the Prosecutor's Office. Later, that same witness was subpoenaed to testify before a grand jury on the same subject matter. The witness attempted to invoke his Fifth Amendment privilege against self-incrimination because he feared that his new testimony would be considered perjury in light of his prior sworn statements. *See id.* at 603, 170 *A.*2d at 818–19. Essentially, the witness forgot what he had claimed the truth to be at the Prosecutor's Office, and now feared he would perjury himself if his story changed. The court in denying the witness's request to invoke his Fifth Amendment privilege, held that an alleged apprehension of a charge of perjury or false swearing, because of a conflict between testimony he might give and his prior sworn testimony with respect to the same questions, was not a valid basis for apprehension of criminal involvement. *See id.* at 602, 170 *A.*2d at 818. The court, went on to explain that, "a court cannot evaluate a naked claim of possible deviation from prior sworn prior testimony", nor determine whether an answer might tend to incriminate. *Id.* at 603, 170 *A.*2d at 818. Specifically, a witness claiming the privilege against self-incrimination must make a sufficient showing to permit the court to pass upon it. *See State v. Craig*, 107 *N.J.Super.* 196, 257 *A.*2d 737 (App.Div.) *certif. denied*, 55 *N.J.* 169, 259 *A.*2d 919 (1969).

Similarly, the fact that the Movants fear variations in their recollection, or the prosecutor expects the Movants to lie is not dispositive. As long as the questioning is material to the investigation, courts have held that the prosecutor is entitled to hope

that upon taking the oath before the grand jury, the witnesses will decide to tell the truth to the best of his or her abilities. *See U.S. v. Chevoor,* 526 *F.*2d 178, 185 (1st Cir.1975).

Thus, the Movants are not entitled to a blanket exemption from appearing before the Special Grand Jury based upon a possible or imaginary fear of incrimination. And assuming the fears are real, same may be unwarranted in light of the grant of immunity.

That being said, it is agreed that the Movants have a valid Fifth Amendment privilege against self-incrimination. Notwithstanding, the Movants are still required to demonstrate that they have suffered or are in immediate danger of suffering a *direct injury, i.e.,* one which is ripe for judicial review. *See Engel,* 249 *N.J.Super.* at 363, 592 *A.*2d at 585. Within the context of the grand jury, Fifth Amendment claims are analyzed by the court on a question-by-question basis, as opposed to a blanket exclusion from ever having to testify—as in the case of a defendant who cannot be forced to take the stand at his or her own trial. *See Addonizio,* 53 *N.J.* at 116, 248 *A.*2d at 536; *Boiardo,* 34 *N.J.* at 603, 170 *A.*2d at 818–19; *Pillo,* 11 *N.J.* at 19, 93 *A.*2d at 181. *See also N.J.R.E.* 502; *N.J.S.A.* 2A:84A–18.

In *In the Matter of John Doe,* 294 *N.J.Super.* 108, 682 *A.*2d 753 (Law Div.1996), Judge Williams held that:

The Fifth Amendment does not prohibit the State from asking questions. *In re Martin,* 90 *N.J.* 295, 331, 447 *A.*2d 1290[, 1308–09](1982). In response to such questions, one has the liberty either to waive the privilege by answering the incriminatory question or to assert the privilege and refuse to incriminate oneself. *State v. Toscano,* 13 *N.J.* 418, 100 *A.*2d 170 (1953). Where the privilege is asserted, the Attorney General may challenge the validity of the privilege claim through application to the court. *In re Boyd,* 36 *N.J.* 285, 176 *A.*2d 793 (1962); *Boiardo,* 34 N.J. 599, 170 *A.*2d 816 (1961); *State v. De Cola,* 33 *N.J.* 335, 164 *A.*2d 729 (1960). Such a proceeding requires an analysis of each individual question eliciting a claim of privilege. The court cannot simply accept the witness's statement that the requested answer will tend to incriminate the witness. *Boiardo, supra,* 34 *N.J.* at 606, 170 *A.*2d 816[, 820]. Rather, the witness must support his assertion of privilege by a statement to the court specifically indicating the nature of the incrimination which the witness fears. The witness must establish a legitimate basis for the fear of criminal prosecution. If the witness is a target of the investigation, however, such witness need show no more than that fact in order to support his or her Fifth Amendment claim. *In re Addonizio,* 53 *N.J.* 107, 248 *A.*2d

531, (1968) * * * Resolution of this issue is premature. Petitioners have not yet responded to the Interrogatories, so it is not clear whether the privilege will actually be asserted with respect to some or all of the questions. If such were to happen, it is not certain that the Attorney General would necessarily challenge the claim of privilege in whole or in part. [*Doe,* 294 *N.J.Super.* at 127–28, 682 *A.2d* at 763].

It is undisputed that the Movants have yet to comply with the subpoena to the Special Grand Jury. As a result, it is unknown what the Movants will be asked or how they will respond. It is unknown whether they will be asked questions for which the Movants will give an incriminating response. It is unknown whether the questions asked and answered will be subject to the grant of immunity in which case a claim of a Fifth Amendment privilege would be irrelevant. Equally important, it is unknown whether the prosecutor will even contest an invocation of the claim of a privilege.

If, and when this occurs, the court will address any Fifth Amendment concerns the Movants may have at that time.[9] However, at the present time, "[r]esolution of this issue is premature. Petitioners have not yet responded to the interrogatories, so it is not clear whether the privilege will actually be asserted with respect to some or all of the questions." *Id.* at 128, 682 *A.2d* at 763.

---

[9] With respect to a Fifth Amendment right to have counsel present during grand jury testimony, our United States Supreme Court in *Mandujano,* 425 *U.S.* 564, 96 *S.Ct.* 1768, 48 *L.Ed.*2d 212 (1976), unequivocally rejected the Fifth Amendment analysis in *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694(1966), applicability to grand jury proceedings. Specifically, in *Miranda,* the court found that the Fifth Amendment applies to *custodial interrogation,* and that the right to counsel being present was to counteract the compulsion inherent in custodial interrogation. The plurality in *Mandujano,* held that **the grand jury is not custodial interrogation** since the **compulsion is not present** when a witness is called to testify before the grand jury. The plurality concluded that applying *Miranda* to the grand jury context would be, "an extravagant expansion never remotely contemplated by this court in *Miranda." Mandujano,* at 580, 96 *S.Ct.* 1768. In a concurring opinion Justice Brennan found that grand jury witnesses have no right to perjure themselves, even assuming the privilege against self-incrimination or a right to counsel were denied. *Id.* at 584–85, 96 *S.Ct.* 1768.

By the same token, it would be inappropriate for the Court to scrutinize or provide each witness with a list of questions that the prosecutor plans to ask. With reference to asserting a Fifth Amendment privilege, the Court would be required to analyze each question prior to it being answered. Such a ruling would be contrary to public policy and could easily be extended to witnesses at trial, who theoretically could argue an entitlement to the questions a defense attorney, prosecutor or the court plan to propound. From a practical standpoint, new information may come to light during the course of any proceeding, which may moot certain questions or raise new ones not previously contemplated. Furthermore, premature disclosure of questions to Movants and judicial review of either questions and/or the material facts underlying the Movants' indictment, would allow the Movants and others to carefully craft their answers and/or limit their responses. *See People v. Breindel*, 73 *Misc.*2d 734, 739, 342 *N.Y.S.*2d 428 (1973), *aff'd*, 45 *App. Div.*2d 691, 356 *N.Y.S.*2d 626, *aff'd mem.*, 35 *N.Y.*2d 928, 365 *N.Y.S.*2d 163, 324 *N.E.*2d 545 (1974).[10] This threat is reasonable and justified in light of the investigatory and confidential nature of grand jury proceedings.

Thus, this court does not find that Movants' general fear of possible incrimination rises to the level of a direct injury mandating the quashing of a subpoena. Should the Special Grand Jury ask a specific question to which the Movants assert their Fifth Amendment privilege, same will be ripe and dealt with by

---

[10] Federal courts have also rejected the position that witnesses must be confronted with evidence in the possession of the prosecutor that is contrary to the witness's testimony. *U.S. v. Jacobs*, 531 *F.*2d 87, 89 (2nd Cir.), *vacated* 429 *U.S.* 909, 97 *S.Ct.* 299, 50 *L.Ed.*2d 277 (1976); *U.S. v. Camporeale*, 515 *F.*2d 184 (2nd Cir.1975); *U.S. v. Del Toro*, 513 *F.*2d 656, 664–665 (2nd Cir.), *cert. denied*, 423 *U.S.* 826, 96 *S.Ct.* 41, 46 *L.Ed.*2d 42 (1975). The rational is that to hold otherwise would force the prosecutor to provide a potentially hostile witness with information from which she could shape her testimony to be truthful only to the extent necessary to overcome independent verification. *See People v. Breindel*, 73 *Misc* 2d 734, 739, 342 *N.Y.S.*2d 428 (N.Y.Sup.Ct.1973), *aff'd*, 45 *App. Div.*2d 691, 356 *N.Y.S.*2d 626, *aff'd mem.*, 35 *N.Y.*2d 928, 365 *N.Y.S.*2d 163, 324 *N.E.*2d 545 (1974).

the court at the appropriate time, in the appropriate setting, and pursuant to the long-approved procedure, provided, however, that such responses fall outside of the grant of immunity currently enjoyed by the Movants.

## VI

Once "criminal proceedings" have begun, an individual's Sixth Amendment right to counsel attaches. *See Kirby v. Illinois,* 406 *U.S.* 682, 92 *S.Ct.* 1877, 32 *L.Ed.*2d 411 (1972). "Criminal proceedings" convert the individual from a suspect into a defendant. A defendant has a right to have counsel present at all proceedings immediately after the commencement of judicial proceedings. The law is clear that the Sixth Amendment right to counsel attaches after a *suspect* has been formally *indicted. See U.S. v. Wade,* 388 *U.S.* 218, 87 *S.Ct.* 1926, 18 *L.Ed.*2d 1149 (1967); *accord State v. Walker,* 80 *N.J.* 187, 403 *A.*2d 1 (1979). This right applies as to the charges which have been formally filed against the indictee. No party, including the State, possesses an absolute entitlement to be represented by counsel in the grand jury. *See R.* 3:6–6(a); *State v. Manney,* 24 *N.J.* 571, 133 *A.*2d 313 (1957); *State v. Hart,* 139 *N.J.Super.* 565, 354 *A.*2d 679 (App.Div.1976).

Even if the Movants could establish a Sixth Amendment entitlement to counsel, courts have recognized that an indicted defendant may be compelled to appear before the grand jury for the purpose of obtaining non-testimonial identification evidence, such as voice exemplars, handwriting exemplars, fingerprints and hair samples. *See In re Grand Jury Investigation No. 2184–86,* 219 *N.J.Super.* 90, 94, 529 *A.*2d 1041, 1043 (Law Div.1987) (*citing State v. Green,* 209 *N.J.Super.* 347, 507 *A.*2d 743 (App.Div.1986), *State v. Dyal,* 97 *N.J.* 229, 478 *A.*2d 390 (1984), *State v. Hall,* 93 *N.J.* 552, 563–64, 461 *A.*2d 1155, 1161–62 *certif. granted,* 91 N.J. 195, 450 A.2d 529 (1982), *aff'd* 93 N.J. 552, 461 A.2d 1155, *cert. denied,* 464 *U.S.* 1008, 104 *S.Ct.* 526, 78 *L.Ed.*2d 709 (1983); *State v. Andretta,* 61 *N.J.* 544, 296 *A.*2d 644 (1972); *State v. Carr,* 124 *N.J.Super.* 114, 304 *A.*2d 781 (Law Div.1973); *State v. Burke,* 172 *N.J.Super.* 555, 412 *A.*2d 1324 (App.Div.1980); *State v. Papitsas,* 80 *N.J.Super.* 420,

194 *A.*2d 8 (App.Div.1963)). *See also U.S. v. Mara,* 410 *U.S.* 19, 93 *S.Ct.* 774, 35 *L.Ed.*2d 99 (1973); *U.S. v. Dionisio,* 410 *U.S.* 1, 93 *S.Ct.* 764, 35 *L.Ed.*2d 67 (1973).

 The Movant allege that since they have been indicted, any subsequent appearance before the same Special Grand Jury would be a violation of their Sixth Amendment right to counsel. This argument would be valid where the Special Grand Jury interrogates the Movants to ascertain information about crimes for which they have already been indicted. Such use of the grand jury is *per se* impermissible and would be a *prima facie* abuse of the grand jury. *See Porro; Doss, supra.* However, it is well recognized that no witnesses including *targets* (the most protected individuals appearing before the grand jury) possess a constitutional right to the presence of counsel *in* the grand jury. *See Van Horn v. City of Trenton,* 80 *N.J.* 528, 535 n. 2, 404 *A.*2d 615, 619 n. 2 (*citing Petition of Groban,* 352 *U.S.* 330, 77 *S.Ct.* 510, 1 *L.Ed.*2d 376 (1957)). *See also U.S. v. Calandra,* 414 *U.S.* 338, 94 *S.Ct.* 613, 38 *L.Ed.*2d 561 (1974); *State v. Stavola,* 118 *N.J.Super.* 393, 288 *A.*2d 41 (App.Div.1972); *State v. Cattaneo,* 123 *N.J.Super.* 167, 302 *A.*2d 138 (App.Div.1973); *U.S. v. Mandujano,* 425 *U.S.* 564, 96 *S.Ct.* 1768, 48 *L.Ed.*2d 212 (1976); *In re Grumbles,* 453 *F.*2d 119 (3rd Cir.1971); *U.S. v. Addonizio,* 313 *F.Supp.* 486 (D.N.J.1970).

As such, there is no basis for granting relief on these grounds.

### VII

 As the Movants point out, courts have found violations of the Fourteenth Amendment due process clause in the context of outrageous prosecutorial misconduct, which violates fundamental fairness. *See U.S. v. Nolan–Cooper,* 155 *F.*3d 221, 229 (3rd. Cir.1998). However, no specific facts have been presented thus far that would indicate any such conduct is currently taking place. Nothing in the record indicates any improper motives on the part of the prosecution to trap or otherwise harass Movants.[11] Subpoe-

---

[11] The power to subpoena witnesses to the grand jury is expansive. This authority is abused when witnesses are called to testify solely for the purposes of

naing the Movants to the Special Grand Jury, standing alone, does not rise to the level of a Due Process violation. Moreover, the fact that the prosecutor has certified that the Movants are not targets and that the Special Grand Jury will be inquiring into arson, murder and conspiracy, and not the charges currently listed in the

harassment or embarrassment, and not for the purpose of information bearing on any criminal investigation. Harassment has been found in cases where witnesses have been subpoenaed without any proper purpose, or questioning particular witnesses repetitively. Although relief has been occasionally granted in harassment cases, it is tough to demonstrate. *See In re Grand Jury Applicants, C. Schmidt & Sons, Inc.,* 619 F.2d 1022 (3rd Cir.1980); *U.S. v. Doe,* 541 F.2d 490 (5th Cir.1976); *In re Soto–Davila,* 96 *FRD* 409 (D.P.R.1983); *In re Wood,* 430 *F.Supp.* 41 (S.D.N.Y.1977). This is because of the scope of the grand jury's investigatory powers and because the grand jury's investigation may lack clarity at the beginning. The grand jury does not need clear evidence of criminal conduct in order to initiate or continue a good faith investigation. Probable cause is not needed to subpoena the appearance of witnesses. Moreover, the secrecy of the grand jury makes it difficult to discover the purpose or relevancy of a particular witness's testimony to a particular investigation. *U.S. v. (Under Seal),* 714 F.2d 347 (4th Cir.), *cert. dismissed,* 464 *U.S.* 978, 104 *S.Ct* 1019, 78 *L.Ed.*2d 354 (1983). Thus, any judicial review / intervention of the propriety of a current grand jury's actions would largely be based upon speculation and assumption.

Relief has been granted in limited circumstances. A federal court dismissed an indictment where there were consecutive grand jury investigations in different states based upon the same course of events. *U.S. v. American Honda Motor Co.,* 273 *F.Supp.* 810, 819 (N.D.Ill.1967). Following an initial indictment, the defendant was subpoenaed to other grand juries in four different cities. In another federal case, the court found that a state grand jury investigation of a civil rights group had been conducted in bad faith solely to harass its members for exercising their constitutionally protected right to freely associate. *Ealy v. Littlejohn,* 569 F.2d 219 (5th Cir.1978). Similarly, in *Brown v. U.S.,* 245 F.2d 549 (8th Cir.1957), the court found a *perjury trap* due to the fact that the grand jury was investigating an incident which occurred 7 years prior and in another state. The only basis for calling the witness was to extract testimony that contradicted the testimony of other witnesses so as to procure a perjury charge. Notwithstanding, the perjury trap doctrine has been construed narrowly, only in those cases where the *sole* motivation of the prosecutor is to procure a perjury charge. *See U.S. v. Lazaros,* 480 F.2d 174, 178–179 (6th Cir.1973).

In the present instance, the Movants have not demonstrated a scintilla of evidence demonstrating any improper motive or objective on the part of the

Movants' sealed indictments, coupled with a grant of immunity further supports what the prosecutor has maintained, namely that the sole motive is to investigate a fire, and not to "railroad" the Movants.

Absent *specific* conduct by the Special Grand Jury from which a discernible constitutional injury can be identified and analyzed, this issue, too, is not yet ripe for judicial intervention.

## VIII

██ In pertinent part, *R.* 3:13–3(b) provides that, "within 14 days of the return or *unsealing* of the indictment", a copy of the prosecutor's discovery, "shall be delivered to the criminal division manager's office, or shall be available at the prosecutor's office." In addition, *R.* 3:13–3(f)(1) permits the court, "for good cause shown", to deny, restrict, or defer discovery or inspection.

Here, on application of the prosecutor and for good cause shown, this court sealed the afore-referenced indictments. Thus, Movants' right to discovery as to these matters is stayed while the indictments are under seal. When the Special Grand Jury investigation has been concluded, including the taking of testimony from Movants, the indictments will, no doubt, be unsealed. Then, and only then, will Movants receive the discovery to which they are entitled. Release of discovery prior to the conclusion of the investigation has the potential to impede or compromise the work of the Special Grand Jury.[12] In addition, it would be myopic of this court not to acknowledge the familial relationship of Movants to one of the prime suspects of the investigation.

---

prosecutor. Should same be established, the Movants are not left without remedies.

[12] As set forth in the Prosecutor's Petition to Extend Time For Sealed Indictment, "it is still necessary at this time to maintain the secrecy of the charges of this indictment to continue the effectiveness of the investigation into the Seton Hall Fire."

## IX

It has often been stated that the wheels of justice grind exceedingly slow. Such is the situation presented in this matter. To grant the relief sought would, in this court's view, bring those wheels to a screeching halt. In a system of justice where the search for the truth is a paramount goal, such a result is unacceptable and untenable.

The State shall submit an order in conformity with this opinion.